Josefina CANALES, Plaintiff,

v.

John E. POTTER, Postmaster
General, Defendant.

Civil No. 06–1701 (DRD).

United States District Court,
D. Puerto Rico.

April 13, 2009.

---

214

Bamily Lopez–Ortiz, Lopez Toro, Law and Notary Offices, San Juan, PR, for Plaintiff.

Fidel A. Sevillano–Del–Rio, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Defendant.

## AMENDED OPINION AND ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is Defendant's *Motion for Summary Judgment* and *Memorandum of Law* (Docket Nos. 23 & 34), and *Plaintiff's Response to in Opposi-*

*tion to Defendant's Motion for Summary Judgment* (Docket Nos. 48). On October 31, 2008, said motions were referred to Magistrate Judge Camille Velez–Rive (Docket No. 36). Consequently, on January 28, 2009, Magistrate Judge Velez–Rive, entered a *Report and Recommendation* (Docket No. 51). The Magistrate Judge recommended that Defendants' *Motion for Summary Judgment* be **DENIED.**

### I. STANDARD OF REVIEW

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

*(Emphasis ours ).*

■ "Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris*

*Craft Corp.,* 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir., 1992); *see also Sands v. Ridefilm Corp.,* 212 F.3d 657, 663 (1st Cir.2000); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir., 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"); *see also United States v. Valencia,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

 If no objections are filed against the Magistrate Judge's Report and Recommendation, the Court, in order to accept the unopposed R & R, needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir., 1996)(en banc)(extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir., 1982)(en banc)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R., 2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED.R.CIV.P. 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa., 1990)("when no objections are filed, the district court need only review the record for plain error").

In the instant case objections were timely filed, hence our standard of review is *de novo* as to those portions objected. 28 U.S.C. 636(b)(1).

## II. ANALYSIS

In the instant case, Defendant has timely filed objects to the *Magistrate Judges's Report and Recommendation.* After carefully reviewing *de novo* the instant case's record and pending motions although the Court agrees and adopts the Magistrate Judge's analysis of the facts of case, as well as the Magistrate's discussion of Plaintiff's retaliation claim, see e.g. Docket No. 51, pgs. 18–25, and Defendant's proposed reasons for the alleged adverse employment action, *see Id.,* at pgs. 25–28, the Court does not reach the same ultimate conclusions. Consequently, the Court shall adopt in part the Magistrate's *Report and Recommendation* (Docket No. 51), as supplemented herein.

The Court finds that Defendant's motion for summary judgment is to be granted. The Court explains.

After reviewing the pending motions as well as the report and recommendation, it is pellucid to the Court that the only issue of material fact that Plaintiff alleges is in controversy and therefore precludes the Court from granting summary judgment is the fact that Plaintiff was not permitted to return to work until March 2006, after requesting to be reinstated several times,

on August 8 [1], August 22 and September 7, 2005. *See* Docket No. 48, pg. 5.

Plaintiff contends that Defendant's non-acquiesce of her request to be reinstated in her position, but conditioned not to be under the supervision of Carlos Perez or in the same office as him, was in retaliation for Plaintiff having filed an EEOC complaint on June 8, 2005. *See Id.*, pgs. 5–6; *see also* Docket No. 26, ¶ 16; Docket No. 48-2, ¶ 1. Defendants understand that under the conditional return, Plaintiff could not be considered medically cleared to return to work. See Docket No. 26, ¶ 17; see also Docket No. 48-2, ¶ 1. Furthermore, Plaintiff avers that notwithstanding the fact that on January 30, 2006, she was cleared to return to work by Mr. Echevarria since her attending psychiatrist excluded the Carlos Perez reference from her medical certificate, she was not allowed to return to work for two additional months, that is until March 13, 2006.[2] *See* Docket No. 48, pg. 7; *see also* Docket No. 26, ¶¶ 19–20. In essence, Plaintiff avers that in regards to the alleged "adverse employment action," considering Defendant's reiterated denial to reinstate Plaintiff, the pertinent question is whether it was reasonable for Defendant to condition Plaintiff's return to work on the removal of Carlos Perez' reference (that she was fit to work but not under the supervision of or in the same office as Carlos Perez) on her medical certificate, in order for Plaintiff to found "fit for duty." *See* Docket No. 48, pg. 8.

After carefully reviewing Plaintiff's contentions, the Court finds that there are no issues of material fact precluding the Court from entertaining this case summarily. In other words, the Court finds that it is uncontroverted that Plaintiff was not allowed to work until she brought a new medical certificate stating that she was "fit for work" without any conditions. In other words, without the condition that she could not work under the supervision of Carlos Perez or in an office with him.

 To establish a prima facie case of retaliation, a plaintiff must show that she:

1. The record shows that on August 8, 2005 Plaintiff was not able to return to work because she was not found fit for duty by Dr. Echevarria, physician for the Postal Service. His finding was based on Plaintiff's psychiatrist medical certificate which indicated that Plaintiff was physically and mentally ready to return to work after May 2005 but not under the supervision of Carlos Perez or in the same office with him. See Docket No. 26, ¶¶ 16, 18.

2. The record shows that on March 13, 2006, Plaintiff returned to work on light duty assignment and continued to work on light duty assignment until approximately December 2006. See Docket No. 26, ¶ 20; see also Docket No. 48-2, ¶ 1. Nevertheless, the Court deems necessary to state that although Plaintiff contends that she was not assigned to work until two months after her medical clearance of January 30, 2006, Plaintiff failed to present evidence of a casual connection between said alleged adverse employment action January–March 2006, and the protected activity of filing an EEOC claim on June 8, 2005, nor can we reasonably infer any such evidence from the facts adduced by Plaintiff. *See Ramirez Rodriguez v. Boehringer Ingelheim*, 425 F.3d 67, 85 (1st Cir.2005)(holding that a two month period between the alleged adverse employment action and the filling of an administrative discrimination claim did not establish a causal connection). Furthermore, although Plaintiff does not so allege, even if the date of her second EEOC complaint is taken into consideration, November 18, 2005, two months had elapsed from her medical clearance of January 30, 2006 and the "month and half" pursuant to the record, that she waited to be reinstated. "If there is an inference of causation, it has a limited lifespan, and 'as the elapsed time between these two event becomes greater, the inference weakens and eventually collapses.'" *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 181 (1st Cir.2008)(quoting *Mole v. University of Massachusetts*, 442 Mass. 582, 814 N.E.2d 329, 341 (2004)).

(1) engaged in a protected conduct; (2) suffered an adverse employment action; and (3) that the adverse employment action was causally connected to the protected conduct. *Noviello v. City of Boston,* 398 F.3d 76, 88 (1st Cir.2005)(citing *Dressler v. Daniel,* 315 F.3d 75, 78 (1st Cir. 2003)); *Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 425 F.3d 67, 84 (1st Cir.2005) (citing *Mesnick v. General Elec. Co.,* 950 F.2d 816, 827 (1st Cir.1991)). Once a plaintiff satisfies the elements of the prima facie case of retaliation, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Ramirez Rodriguez,* 425 F.3d at 84; *Valentin–Almeyda v. Municipality of Aguadilla,* 447 F.3d 85, 95 (1st Cir.2006). The ultimate burden of persuasion, however, remains with the plaintiff and she must show that the employer's nondiscriminatory reason is a pretext for retaliatory discrimination. *Id.*

 To successfully establish a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)(quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (C.A.D.C.2006)). Retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64, 126 S.Ct. 2405. "The alleged retaliatory action must be material, producing a significant, not trivial, harm." *Carmona–Rivera v. Commonwealth of Puerto Rico,* 464 F.3d 14, 19 (1st Cir.2006). " 'Context matters,' and 'the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the ba-

sis of the [discrimination] complaint.' " *Id.* (citing *Burlington Northern,* 548 U.S. at 69–70, 126 S.Ct. 2405). The First Circuit has held that "adverse employment actions include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.' " *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 23 (1st Cir.2002) (quoting *White v. New Hampshire Dept. of Corrections,* 221 F.3d 254, 262 (1st Cir.2000)). Whether an action is sufficient to support a claim of retaliation is judged objectively and depends on the particular circumstances of the case. *Burlington Northern,* 548 U.S. at 69, 126 S.Ct. 2405; *Marrero,* 304 F.3d at 23.

 A plaintiff must show a causal connection between her protected conduct and the adverse employment action. *Ramirez Rodriguez,* 425 F.3d at 84. Close temporal proximity between two events may give rise to an inference of causal connection. *See Calero–Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 25 (1st Cir. 2004). Mere temporal proximity between an employer's knowledge of protected conduct and an adverse action may establish causation if the temporal proximity is "very close." *Id.* (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). For example, in *Calero–Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 25–26 (1st Cir.2004), the First Circuit concluded that a **one month** interval was sufficient to satisfy the causal connection prong of the prima facie case. In determining whether causation exists, however, courts "should consider the actions taken against the employee within the overall context and sequence of events[,] the historical background of the decision, any departures from normal procedure, and contemporary statements by the employer's decision

makers." *Vargas v. Puerto Rican–American Ins. Co.*, 52 F.Supp.2d 305, 313–14 (D.P.R.1999).

■ The Court finds that it is uncontested that Plaintiff engaged in a protected conduct, by filing an EEOC claim on June 8, 2005. Nevertheless, Plaintiff failed to provide sufficient evidence in order to satisfy the second prong. Defendant's conduct, of denying Plaintiff to return to work because she was not, in Mr. Echevarrias opinion, "fit to work" if her "fitness" was conditioned upon not working under the supervision of or in the same office as Carlos Perez, cannot be considered as an adverse employment action. As aforementioned, to successfully establish a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. 2405 (quoting *Rochon*, 438 F.3d at 1219). Hence, the Court finds that since from Plaintiff's initial request to return to work, her "fit to work" medical certification was conditioned upon no working with or in the same office as Carlos Perez, "a reasonable employee would have [not] found the challenged action materially adverse." *Id.*

Especially when the record shows that as soon as Plaintiff brought a medical certificate without any conditions, Plaintiff was found "fit to work" by Mr. Echevarria and was permitted to return to work on light duty assignment, starting on March 13, 2006. Furthermore, the record shows that from March 13, 2006 until October 13, 2006, Plaintiff worked with Carlos Perez without any further formal complaints. *See* Docket No. 26, ¶ 20. After October 13, 2006, Plaintiff was detailed to work for Antonio Guzman up to April 2007 when Plaintiff bid and was awarded the position of Safety Specialist—EAS—Grade 16 level, a permanent position under Mr. Guzman's supervision, which she presently holds. Moreover, the Court cannot determine, that Defendant's conduct was in fact an adverse employment action since it would be a clear error of law and an incorrect precedent to create, that Defendant should have acquiesced Plaintiff's "reasonable accommodation" or "condition" of not having to work under the supervision of or in the same office as Carlos Perez. This determination would provide employees an unprecedented power of dictating with whom and where they want to work since a denial of said request could cause future frivolous claims against employers, who don't acquiesce their employees requests. Especially when Plaintiff has clearly stated that she has not claimed being a victim of a disability discrimination in order for the Court to find that she deserved such a "reasonable accommodation." What is more, several courts have decided that even in disability discrimination cases, "[t]he major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance." *Weiler v. Household Finance, Corp.*, 101 F.3d 519, 524 (7th Cir. 1996); *see also Schneiker v. Fortis Ins., Co.*, 200 F.3d 1055, 1062 (7th Cir.2000)(The Court held that "[s]tanding alone, a personality conflict between an employee and a supervisor—even one that triggers the employee's depression—is not enough to establish that the employee is disabled...."); *Hawkins v. Potter*, 316 Fed. Appx. 957, 962, 2009 WL 511604, *4 (11th Cir.2009)(The Court found that an employer's refusal to accommodate an employee's request for a reassignment to another post office could not be considered "materially adverse.")

▮▮▮▮ Nevertheless, assuming *arguendo* that Plaintiff had shown that Defendant's conduct was in fact an adverse employment action, thereby fulfilling the second prong, the Court finds that Plaintiff failed to provide any evidence showing that there was a causally link between the adverse employment action and Plaintiff's protected conduct. The Court finds that after considering the alleged adverse employment actions and Plaintiff's filing of the EEOC claim on June 8, 2005, "a reasonable fact finder could [not] find an adequate causal link between these events." *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 84–85 (1st Cir.2006). Furthermore, the Court finds that there was no temporal proximity between Plaintiff's protected activity of filing an EEOC claim on June 8, 2005, and Maryann Visconti's denial of Plaintiff's request to return to work on August 22, 2005. *See Ramirez Rodriguez*, 425 F.3d at 85 (holding that a two month period between the alleged adverse employment action and the filling of an administrative discrimination claim did not establish a causal connection).

Temporal proximity can create an inference of causation in the proper case. *See Wyatt v. Boston*, 35 F.3d 13, 16 (1st Cir.1994). But to draw such an inference, there must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action. *See Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 16–17 (1st Cir.1997).

But if there was temporal proximity and therefore an inference could be drawn, there must be proof that the decisionmaker knew of Plaintiff's protected activity.[3] First, the Court notes that the only evidence on the record pertaining to a decisionmaker, Mr. Visconti, having knowledge of Plaintiff's EEOC claim is in Plaintiff's Complaint (Docket No. 1, ¶ 18). In ¶ 18 of the Complaint Plaintiff alleged that on September 7, 2005, Ms. Visconti told Plaintiff that "if [Rebecca] Agostini [Manager of Personnel,] had removed plaintiff from the higher level position, she was not going to reinstate plaintiff," which Plaintiff contends is "a clear and direct reference to plaintiff's prior EEO Complaint ... filed June 2005." *Id.* The Court finds that this alleged comment is not a clear and direct reference to Plaintiff's EEOC claim of June 2005. It only proves that Ms. Visconti knew that Ms. Agostini had removed Plaintiff from one position to another. Nevertheless, the Court finds that even if said comment could be considered as a reference to Plaintiff's EEOC claim, the same was made on September 7, 2005, which constituted the second time Plaintiff had asked Ms Visconti to return to work. Hence, there being no evidence that on August 22, 2005, the first time Ms. Visconti advised Plaintiff that she could not return to work as she was not medically cleared, Ms. Visconti had knowledge of Plaintiff's EEOC claim but still denied Plaintiff's request to return to work, demonstrating that Plaintiff's filing of her EEOC claim was not a substantial or motivating factor behind Ms. Visconti's denial of Plaintiff to return to work. On the other hand, it shows that from the beginning the denial of Plaintiff's several requests to return to work were prompted by Defendant's and Mr. Echevarria's understanding that Plaintiff was not medically cleared.

Therefore, the Court finds that although Plaintiff did in fact engage in a protected

---

**3.** Although Plaintiff does not allege so, the fact that on August 8, 2005 Mr. Echevarria, physician for USPS, found Plaintiff not fit "for duty," cannot be considered in any way as a form of retaliation, especially when there is no evidence in the record to show that Mr. Echevarria knew of Plaintiff's EEOC claim, nor is he a decisionmaker as to whether or not Plaintiff could be permitted to return to work.

conduct by filing an EEOC claim in June 8, 2005, she failed to adduce sufficient evidence to show that she suffered an adverse employment action, and *arguendo* failed to show that said adverse employment action was causally linked to her protected conduct. Hence, Plaintiff failed to successfully establish a retaliation claim.

### III. CONCLUSION

For the reasons state above, and after carefully reviewing *de novo* the instant case's record and pending motions, the Court **adopts in part** the Magistrate's *Report and Recommendation* (Docket No. 51), as supplemented herein.

Therefore, the Court hereby **GRANTS** *Defendant's Motion for Summary Judgment.* Judgment shall be entered accordingly.

**IT IS SO ORDERED AMENDING NUNC PRO TUNC THE OPINION AND ORDER ENTERED ON MARCH 31, 2009.**